UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ODELIA ANDERSON, Supervised Administrator of the Estate of MELISSA WEAKLEY, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 5824 |
| v. | ) ) | Judge Shadur |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## PETITION FOR APPROVAL OF SETTLEMENT

NOW COMES Plaintiff, ODELIA ANDERSON, as Supervised Administrator of the Estate of MELISSA WEAKLEY, deceased, by and through her attorneys, Cogan & Power, and moves this court to approve the settlement between the United States and plaintiff Odelia Anderson, as Supervised Administrator of the Estate of Melissa Weakley. In support thereof the movant states as follows:

1.      This is a Federal Torts Claim Act claim for the wrongful death of Melissa Weakley by deemed employees of the defendant United States and a survival action on behalf of the Estate of Melissa Weakley.

2.      Melissa Weakley is survived by her four minor children Marquiana Griffin, Damione Howard, Diamond Howard, and Devin Howard.

3.      Plaintiff contends that the evidence in this case shows that employees of the Friend Family Health Center were negligent in their treatment of Melissa Weakley between 2006 and 2010 when they failed to adequately and properly follow-up with Ms. Weakley regarding her

abnormal Pap smear results. Plaintiff seeks damages for lost wages, funeral expenses and loss of society on behalf of the Estate of Ms. Weakley and on behalf of the four minor children.

4.    The United States has not conceded liability.

5.    In order to avoid the expense and uncertainty of further litigation, the plaintiff has agreed to settle this case for $6,00,000.00 consistent with the terms and conditions set forth in the Stipulation attached as Exhibit A to this motion. Counsel representing the United States has agreed to recommend this settlement to the Department of Justice, but the Attorney General or the Attorney General's designee must still approve the terms of the settlement and authorize the attorney representing the United States in this case to consummate a settlement for the amount and upon the terms and conditions agreed upon by the parties, as set forth in the attached Stipulation

Wherefore, Plaintiff moves this court enter an order approving the settlement amount as fair and reasonable. Upon approval of the settlement by the US Department of Justice, Plaintiff will commence probate proceedings in the Circuit Court of Cook County, Illinois for each of the heirs of Melissa Weakley.

Further, In the event the Department of Justice and/or the Probate Division of the Circuit Court of Cook County, Illinois, fails to approve this settlement, in its entirety, as set forth in the Stipulation for Compromise Settlement and Release of Federal Tort Claims Act Pursuant to 28 U.S.C. 2677 , that this order will be vacated, *nunc pro tunc* to the date of entry, and the matter shall be placed on Judge Milton Shadur's civil call for discovery and trial.

Respectfully submitted,

s/ Michael P. Cogan
MICHAEL P. COGAN

Michael P. Cogan (ARDC#6180126)
Jon C. Papin (ARDC#6200779)
**COGAN & POWER, P.C.**
One East Wacker Drive, Suite 510
Chicago, Illinois 60601
(312) 477-2500
(312) 477-2501 (Fax)
mcogan@coganpower.com
jpapin@coganpower.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ODELIA ANDERSON, Supervised Administrator of the Estate of MELISSA WEAKLEY, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 5824 |
| v. | ) ) | Judge Shadur |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

## STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677

It is hereby stipulated by and between the undersigned plaintiff (meaning any person, other than the defendant, the attorneys, and the Settlement Broker, signing this agreement, whether or not a party to this civil action), and the United States of America, by and through their respective attorneys, as follows:

1.    The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Settlement Agreement.

2.    This Stipulation for Compromise Settlement and Release is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the plaintiffs.  This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3. In consideration for Plaintiff's agreement to accept the terms and conditions of this settlement, the United States agrees to pay the cash sums set forth below in Paragraph 3.a. and to purchase the annuity contracts described below in Paragraph 3.b.

a. Within three business days after counsel for the United States receives: (1) this Stipulation signed by all parties to said document; (2) the Social Security numbers or tax identification numbers of Plaintiffs and their attorneys; (3) a fully executed waiver and release by each State, including the State of Illinois, each private and public entity, and each private individual, of any and all past, present, and future claims or liens for reimbursement or payment any such State, private or public entity, or private individual may have from any benefits or payments made by them to or on behalf of Melissa Weakley, arising out of the subject matter of this action, if any; (4) a fully executed waiver and release by each State, including the State of Illinois, any private or public entity, or private individual, who has or may have now or in the future a claim or cause of action against the United States arising out of the subject matter of the above-captioned action, including any claim for contribution, indemnification, or subrogation, if any; (5) court Order approving the settlement on behalf of the Estate of Melissa Weakley, and on behalf of Marquiana Griffin, a minor, Damione Howard, a minor, Diamond Howard, a minor, and Devin Howard, a minor; and (6) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will send a formal request to the Health Resources and Services Administration, Department of Health and Human Services, requesting that the sum of Six Million Dollars ($6,000,000.00) (hereinafter "Settlement Amount") be expeditiously sent by electronic funds transfer (EFT) to the settlement trust account of Mesirow Financial Structured Settlements, Inc. (hereinafter "Mesirow Financial").

Within five business days after Mesirow Financial has received from Plaintiff's counsel the birth certificates and social security cards of Marquiana Griffin, Damione Howard, Diamond Howard, and Devin Howard, minors, Mesirow Financial agrees to distribute the Settlement Amount, as provided below in subparagraphs 3.a.(1) and 3.a.(2).

(1)     A check in the amount of Two Million, Three Hundred Fifty Thousand Dollars ($2,350,000.00) (hereinafter "Upfront Cash") made payable to the Estate of Melissa Weakley and delivered to the United States Attorney's Office for the Northern District of Illinois to hold until Plaintiff's attorney has filed a motion with the United States District Court to dismiss this action in its entirety with prejudice, with each party to bear its own costs, expenses, and fees.

With respect to the payment of the Upfront Cash, Plaintiff stipulates and agrees that the United States will not sign an annuity application form, a uniform qualified settlement form, or any equivalent such forms, and that the United States will not pay the Upfront Cash into a qualified settlement fund or an equivalent fund or account. Plaintiff further stipulates and agrees that she, her attorney(s), any Guardian Ad Litem, and their representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Upfront Cash in any way, form, or manner, including by placing any of the Upfront Cash into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.a.(1) precludes the Plaintiff from purchasing standard, non-structured settlement annuities after the Plaintiff has cashed the Upfront Cash settlement check, but she agrees that she will not represent to any person, entity, or agency that she is purchasing structured settlement annuities and she agrees they will not attempt to purchase such structured settlement annuities.

Plaintiff agrees to endorse the Upfront Cash check over to her attorney to be deposited in her attorney's client trust account to facilitate the disbursement of the Upfront Cash as authorized by the approving court.

(2)     Pay to an annuity company(ies), rated at least A by A.M. Best rating service, the sum of Three Million, Six Hundred Fifty Thousand Dollars ($3,650,000.00) to purchase the annuity contracts described in paragraph 3.b. below.

The parties agree that any attorneys' fees owed by the Plaintiffs in their Federal Tort Claims Act suit against the United States shall not exceed twenty-five percent (25%) of the Settlement Amount. 28 U.S.C. § 2678. The parties further agree that any such attorneys' fees, along with Plaintiff's costs and expenses of this action against the United States and their costs, expenses, and fees (including Guardian Ad Litem fees) associated with obtaining court approval of this settlement on behalf of the minor children, shall be paid out of the Upfront Cash paid pursuant to paragraph 3.a.(1) above, and not in addition thereto.

The Plaintiff stipulates and agrees that she is legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement, including any past, present, and future liens or claims for payment or reimbursement by any individual or entity, including an insurance company, Medicaid, and Medicare, arising from the injuries that are the subject matter of this action. The Plaintiff stipulates and agrees that she will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity. The Plaintiff and her attorney represent that, as of the date they sign this Stipulation, they have made a diligent search and effort to determine the identity of any individual or entity that has or may have a lien or a claim for payment or reimbursement arising from the injuries that are the subject matter of this action.

(2011 Edition)                    Page 4 of 12

The Plaintiff agrees that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by the Plaintiff, they will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder or Plaintiff has waived and released such lien or claim. The evidence required by the terms of this Paragraph may be satisfied by a letter from Plaintiff's attorney representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder or Plaintiff has waived and released such lien and claim.

b. The United States will purchase annuity contracts to make the periodic payments to the annuity payees set forth in subparagraphs (1)-(4) below based on the following terms and conditions set forth in this paragraph 3.b:

(1) An annuity contract to pay to Marquiana Griffin (or, during any period of minority or upon being determined to be legally incompetent, to an account opened for the behalf of Marquiana Griffin) the following sums: (a) $25,000.00 semi-annually for eight (8) payments certain, beginning on July 1, 2015; (b) $1,000.00 per month for forty eight (48) payments certain, beginning August 1, 2015; and (c) $1,580.00 per month increasing at three percent (3%) compounded annually after the first year of payment, beginning on August 1, 2019 and continuing for the life of Marquiana Griffin (DOB as provided by Plaintiff: January 18, 1997), with four hundred eighty (480) payments certain. In the event the cost of the annuity contract has either increased or decreased by the date of purchase, the lifetime monthly annuity payments set forth above shall be adjusted downward or upward to ensure that the premium cost of the annuity contract is equal to Nine Hundred, Twelve Thousand, and Five Hundred Dollars ($912,500.00) and not more or less than that amount. Upon the death of Marquiana Griffin, any payments remaining during a period certain shall be paid to the Estate of Marquiana Griffin.

(2)     An annuity contract to pay to Damione Howard (or, during any period of minority or upon being determined to be legally incompetent, to an account opened for the behalf of Damione Howard) the following sums:  (a) $35,000.00 semi-annually for eight (8) payments certain, beginning on July 1, 2020; (b) $1,500.00 per month for forty eight (48) payments certain, beginning August 1, 2020; and (c) $1,925.00 per month increasing at three percent (3%) compounded annually after the first year of payment, beginning on August 1, 2024 and continuing for the life of Damione Howard (DOB as provided by Plaintiff: April 22, 2002), with four hundred eighty (480) payments certain.  In the event the cost of the annuity contract has either increased or decreased by the date of purchase, the lifetime monthly annuity payments set forth above shall be adjusted downward or upward to ensure that the premium cost of the annuity contract is equal to Nine Hundred, Twelve Thousand, and Five Hundred Dollars ($912,500.00) and not more or less than that amount.  Upon the death of Damione Howard, any payments remaining during a period certain shall be paid to the Estate of Damione Howard.

(3)     An annuity contract to pay to Diamond Howard (or, during any period of minority or upon being determined to be legally incompetent, to an account opened for the behalf of Diamond Howard) the following sums:  (a) $35,000.00 semi-annually for eight (8) payments certain, beginning on July 1, 2022; (b) $1,500.00 per month for forty eight (48) payments certain, beginning August 1, 2022; and (c) $2,085.00 per month increasing at three percent (3%) compounded annually after the first year of payment, beginning on August 1, 2026 and continuing for the life of Diamond Howard (DOB as provided by Plaintiff: September 27, 2003), with four hundred eighty (480) payments certain.  In the event the cost of the annuity contract has either increased or decreased by the date of purchase, the lifetime monthly annuity payments set forth above shall be adjusted downward or upward to ensure that the premium cost of the

(2011 Edition)                    Page 6 of 12

annuity contract is equal to Nine Hundred, Twelve Thousand, and Five Hundred Dollars ($912,500.00) and not more or less than that amount. Upon the death of Diamond Howard, any payments remaining during a period certain shall be paid to the Estate of Diamond Howard.

(4)     An annuity contract to pay to Devin Howard (or, during any period of minority or upon being determined to be legally incompetent, to an account opened for the behalf of Devin Howard) the following sums: (a) $37,500.00 semi-annually for eight (8) payments certain, beginning on July 1, 2024; (b) $1,750.00 per month for forty eight (48) payments certain, beginning August 1, 2024; and (c) $2,345.00 per month increasing at three percent (3%) compounded annually after the first year of payment, beginning on August 1, 2028 and continuing for the life of Devin Howard (DOB as provided by Plaintiff: March 28, 2006), with four hundred eighty (480) payments certain. In the event the cost of the annuity contract has either increased or decreased by the date of purchase, the lifetime monthly annuity payments set forth above shall be adjusted downward or upward to ensure that the premium cost of the annuity contract is equal to Nine Hundred, Twelve Thousand, and Five Hundred Dollars ($912,500.00) and not more or less than that amount. Upon the death of Devin Howard, any payments remaining during a period certain shall be paid to the Estate of Devin Howard.

(5)     Any annuity contracts being purchased pursuant to this paragraph 3.b. will be owned solely and exclusively by the United States and will be purchased through Mesirow Financial as specified above in Paragraph 3.a. The parties stipulate and agree that the United States' only obligation with respect to an annuity contract and any annuity payments therefrom is to purchase said contract, and they further agree that the United States does not guarantee or insure any of the annuity payments. The parties further stipulate and agree that the United States

(2011 Edition)                    Page 7 of 12

is released from any and all obligations with respect to an annuity contract and annuity payments upon the purchase of said contract.

(6)     The parties stipulate and agree that the annuity company that issues an annuity contract shall, at all times, have the sole obligation for making all annuity payments. The obligation of the annuity company to make each annuity payment shall be discharged upon the mailing of a valid check, or executing an electronic funds transfer, in the amount of such payment to the address, or account, designated by the party to whom the payment is required to be made under this Stipulation. Payments lost or delayed through no fault of the annuity company shall be promptly replaced by the annuity company, but the annuity company is not liable for interest during the interim.

(7)     The parties stipulate and agree that the annuity payments cannot be assigned, accelerated, deferred, increased, or decreased by the parties; that no part of any annuity payments called for herein, nor any assets of the United States or the annuity company, are subject to execution or any legal process for any obligation in any manner; and that Plaintiff shall not have the power or right to sell, assign, mortgage, encumber, or anticipate said annuity payments, or any part thereof, by assignment or otherwise.

(8)     Plaintiff and Plaintiff's guardians, heirs, executors, administrators, and assigns do hereby agree to maintain with the annuity company and the United States a current mailing address for each annuity payee identified above in subparagraphs 3.b(1)-(4), to notify the annuity company and the United States of the death of any of said annuity payees within ten (10) days of death, and to provide to the annuity company and the United States a certified death certificate within thirty (30) days of death.

4.     Plaintiff and her guardians, heirs, executors, administrators, or assigns do hereby accept the cash sums set forth above in paragraph 3.a and the purchase of the annuity contract(s) set forth above in paragraph 3.b in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including any future claims for wrongful death and any claims for fees, costs and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, death, or damage to property, and the consequences thereof, which the plaintiff or her heirs, executors, administrators, or assigns may have or hereafter acquire against the United States, its agents, servants and employees on account of the same subject matter that gave rise to the above-captioned action.  Plaintiff and her guardians, heirs, executors, administrators, and assigns do hereby further agree to reimburse, indemnify and hold harmless the United States and its agents, servants, and employees from and against any and all such claims, causes of action, liens, rights, or subrogated or contribution interests incident to or resulting or arising from the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

5.     This compromise settlement is specifically subject to each of the following conditions:

a.     An agreement by the parties on the terms, conditions, and requirements of this Stipulation for Compromise Settlement and Release and the annuity contract(s).  The parties stipulate and agree that the Stipulation for Compromise Settlement and Release and the compromise settlement are null and void in the event the parties cannot agree on the terms, conditions and requirements of this Stipulation for Compromise Settlement and Release and the annuity contract(s).  The terms, conditions and requirements of this Stipulation for Compromise

(2011 Edition)                              Page 9 of 12

Settlement and Release are not severable, and the failure to agree, fulfill or comply with any term, condition, or requirement renders the entire Stipulation for Compromise Settlement and Release and the compromise settlement null and void. The authorization by the Attorney General or the Attorney General's designee to negotiate and consummate a settlement for the amount agreed upon by the parties does not make the settlement binding upon the United States unless and until the other terms, conditions, and requirements of this Stipulation for Compromise Settlement and Release have been completely agreed upon in writing.

b. Each beneficiary of the annuity contracts set forth above in paragraph 3.b must be alive at the time of the purchase of said annuity contracts. In the event of the death of any beneficiary prior to the purchase of said annuity contracts, the entire Stipulation for Compromise Settlement and Release and the compromise settlement are null and void.

c. In the event any plaintiff is an estate, a minor or a legally incompetent adult, Plaintiff must obtain, at her expense, court approval of the settlement by a court of competent jurisdiction. Such court approval must be obtained prior to the United States Attorney's Office seeking approval of this settlement. Plaintiff agrees to obtain such approval in a timely manner: time being of the essence. Plaintiff further agrees that the United States may void this settlement at its option in the event such approval is not obtained in a timely manner. In the event plaintiff fails to obtain such court approval, the entire Stipulation for Compromise Settlement and Release and the compromise settlement are null and void.

6. Plaintiff's attorney agrees to distribute the settlement proceeds to the plaintiff and to obtain a dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

(2011 Edition)                    Page 10 of 12

7.     The parties agree that this Stipulation for Compromise Settlement and Release, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

8.     It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party.  All such counterparts and signature pages, together, shall be deemed to be one document.

Executed this _____ day of _____, 2013_.

Gary S. Shapiro
United States Attorney

By:

_____
Amanda A. Berndt
Assistant United States Attorney
*Attorney for Defendant, United States of America*

Executed this _____ day of _____, 2013_.

_____
Michael P. Cogan
*Attorneys for Plaintiff Odelia Anderson*

Executed this _13th_ day of _AUGUST_, 2013.

_____
Odelia Anderson , Supervised Administrator
of the Estate of Melissa Weakely, Deceased
*Plaintiff*

(2011 Edition)                         Page 11 of 12

Executed this _____ day of _____, 2013.

_____

Thomas Walsh
Mesirow Financial Structured Settlements